NOT FOR PUBLICATION

```
             IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
                        CAMDEN VICINAGE


_____
                               :
WILLIAM A. GARRISON,           :
                               :
            Plaintiff,         :   Civil No. 06-3495 (RBK)
                               :
v.                             :   OPINION
                               :
MICHAEL J. ASTRUE,             :
COMMISSIONER OF SOCIAL         :
SECURITY,                      :
                               :
            Defendant.         :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the Court upon appeal by Plaintiff William A. Garrison ("Garrison"), pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB"). For the reasons set forth below, the Court will affirm the Administrative Law Judge's ("ALJ") decision.

**I.     Background**

   A.   Factual History

Garrison, born on April 7, 1956, alleges that he is disabled with an onset date of September 19, 2002 due to cardiac disease causing fatigue, shortness of breath, dizziness, and chest pain. (R. at 113.)  Moreover, he claims that his condition is further complicated by the implantation of an internal defibrillator and severe back pain.  (R. at 41.)  Garrison has a tenth grade education and has worked in construction as a laborer since 1972. (R. at 34.)

Correspondence and patient notes in the record from Garrison's primary care physician, Dr. Frank D. Brigio, confirm that Garrison was under his care beginning at least in December of 1996.  (R. at 178.)  Garrison visited Dr. Brigio in July of 2002 complaining of leg pains and cramps.  (R. at 232.)  After tests revealed severe blockage in Garrison's left leg, Dr. Brigio referred Garrison to vascular surgeon Dr. Aftab A. Khan for surgery.  (R. at 232.)  Blood work prior to surgery revealed that Garrison had Hepatitis C.  (R. at 232.)  Garrison was admitted to the hospital in September of 2002 for an angioplasty in his left leg.  (R. at 148.)  After the procedure, he suffered a

2

ventricular fibrillation and required CPR. (R. at 148.) Following the cardiac arrest, Garrison received a cardiac catheterization and an internal cardiac defibrillator, or ICD, was implanted in his chest by cardiologist Dr. Steven A. Levi. (R. at 161.) Dr. Levi stated that Garrison should not work construction because of the ICD. (R. at 202.) In Dr. Levi's opinion, the presence of the ICD creates a danger to Garrison or to others if Garrison is working in a construction work environment. (R. at 202.) Dr. Brigio diagnosed Garrison with diabetes in June of 2004, however there is no evidence that this disease has resulted in any functional restrictions thus it does not affect Garrison's DIB application. (R. at 228.)

Garrison visited orthopedist Dr. Mark K. Levitsky complaining of chronic back pain in January of 2004. (R. at 212.) Dr. Levitsky evaluated Garrison again both in April and May of 2004. (R. at 210.) Dr. Levitsky was unable to corroborate Garrison's subjective complaints with any physical evaluation including a CAT scan. (R. at 208.) Dr. Levitsky determined that an MRI was needed but not possible due to Garrison's ICD. (R. at 208.) Dr. Levitsky prescribed physical therapy and pain medication in an attempt to curb Garrison's symptoms. (R. at 210.) Garrison also complained to Dr. Brigio of back pain after

his visits with Dr. Levitsky. (R. at 229.) Dr. Brigio determined that Garrison was not a surgical candidate and stated that the physical therapy and medication were of no help. (R. at 229.) Finally, Dr. Brigio prescribed epidural injections that were completed in April of 2005. (R. at 258.) Garrison stated that the epidurals reduced his back pain by ninety percent. (R. at 260.)

Dr. Brigio completed a "Medical Source Statement" form for Garrison in May 2005. (R. at 241). On this form, Dr. Brigio opined that Garrison could perform sedentary work a maximum of two hours per day, two days per week. (R. at 247.) In addition, Dr. Brigio stated that medications prescribed to Garrison would place a "severe limitation" on his ability to perform even the most simple work tasks. (R. at 243.) Dr. Brigio also listed that Garrison suffered from profound, virtually incapacitating pain as well as fatigue that would prevent him from performing normal, full time work activities on a frequent basis. (R. at 242.)

The record contains a residual functional capacity ("RFC") assessment, dated September 18, 2003. (R. at 188.) The assessment states that Garrison could perform medium work which

includes occasionally lifting as much as fifty pounds, frequently lifting as much as twenty five pounds, and standing or walking for as long as 6 hours per day.  (R. at 189.)

    B.   Procedual History

Garrison applied for DIB based on his disability on June 9, 2003.  (R. at 19.)  The Social Security Administration denied his claim on July 18, 2003.  (R. at 57.)  Garrison then applied for reconsideration of his initial application on October 24, 2003.  (R. at 57.)  Garrison alleged that his condition had deteriorated since his initial application.  (R. at 122.)  The initial denial was affirmed on November 6, 2003.  (R. at 57.)  Garrison requested a hearing before an ALJ on December 31, 2003.  (R. at 66.)  Garrison appealed the ALJ's decision on October 12, 2005, which the Appeals Council denied on May 26, 2006.  (R. at 5.)  At that time, the ALJ's decision became the final determination of the Commissioner of Social Security.  (R. at 5.)  Garrison appealed to this Court on July 28, 2006.

    C.   ALJ Arrastia's Opinion

ALJ Javier Arrastia presided over a hearing on May 18, 2005, (R. at 19) and denied Garrison's appeal on August 25, 2005.  (R. at 25.)  In his opinion, ALJ Arrastia stated that he did not find Garrison's testimony of constant chest pain, fatigue, and

5

shortness of breath entirely credible because it is contrary to the records of the claimant's treating cardiologist, which state that Garrison has no complaints of chest pain or shortness of breath. (R. at 21.) ALJ Arrastia did not accept Dr. Brigio's statement that Garrison has muscle weakness and an abnormal gait because it is contrary to the records of the treating orthopedist, Dr. Levitsky. (R. at 21.) ALJ Arrastia also rejected Dr. Brigio's statement that Garrison has anxiety, somatoform disorder, and depression because none of these conditions have been diagnosed or treated by a mental health professional. (R. at 21.) Therefore, Dr. Brigio's opinion did not provide controlling weight and was not given significant weight by ALJ Arrastia. (R. at 21.) ALJ Arrastia rejected the RFC Assessment because the assessment conflicts with Garrison's testimony and the opinion of Dr. Levi that Garrison could be harmful to himself or others in a construction-type work environment due to his ICD. (R. at 22.) Ultimately, ALJ Arrastia found that Garrison could perform sedentary work under the Medical-Vocational Guidelines and thus found that Garrison was not disabled under Medical Vocational Rule 201.18. (R. at 23.)

**II.   Standard of Review**

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The review of the Commissioner's final decision is limited to ascertain whether the decision is supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Morales v. Apfel, 225 F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)).  If the Commissioner's determination is supported by substantial evidence, the Court may not set aside the decision, even if the Court "would have decided the factual inquiry differently." Fargonli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (Hartranft, 181 F.3d 358, 360 (3d Cir. 1999)); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (holding that a district court may not "weigh the evidence or substitute its conclusions for those of the fact finder") (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

Nevertheless, the reviewing court must be wary of treating "the existence vel non of substantial evidence as merely a quantitative exercise" or as "talismanic or self-executing

7

formula for adjudication." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."). The Court must set aside the Commissioner's decision if the Commissioner did not take into account the entire record or failed to resolve an evidentiary conflict. See Schonewolf v. Callahan, 972 F. Supp. 277, 284085 (D.N.J. 1997) ("[U]nless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.") (quoting Gober v. Matthews 574 F.2d 772, 776 (3d Cir. 1978)). Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." Wallace v. Sec. of Health and Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d 110, 114 (3d Cir. 1983)).

**III. Discussion**

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). The Commissioner first evaluates whether the claimant is currently engaging in a "substantial gainful activity." Such activity bars the receipt of benefits. 20 C.F.R. § 404.1520(a). The Commissioner then ascertains whether the claimant is suffering from a severe impairment, meaning "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the Commissioner finds that the claimant's condition is severe, the Commissioner evaluates whether it meets or equals a listed impairment. 20 C.F.R. § 404.1520(d). If the condition is equivalent to a listed impairment, the claimant is entitled to benefits; if not, the Commissioner continues on to step four to evaluate the claimant's residual functional capacity ("RFC") and determine whether the RFC would entitle the claimant to return to his "past relevant work." 20 C.F.R. § 404.1520(e). The ability to return to past relevant work precludes a finding of disability. If the Commissioner finds the claimant unable to resume past relevant work, the burden shifts to the Commissioner

9

to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy." Jones, 364 F.3d at 503 (citing 30 C.F.R. § 404.1520(f)).

Garrison argues that the ALJ 1) failed to give controlling weight to the opinion of the treating physician; 2) erred in the determination of credibility; 3) erred in failing to find Garrison's back impairment severe at Step Two; and 4) erred in the formulation of Garrison's RFC. Additionally, Garrison has provided new evidence that was not in the previous record.

A.   Medical Opinion of Treating Physician

Garrison argues that ALJ Arrastia failed to give appropriate weight to the medical opinion of Dr. Brigio.

According to the Commissioner's regulations, a medical opinion must be supported by clinical and laboratory evidence, and be consistent with other substantial evidence of record to be given controlling weight. 20 C.F.R. §§ 404.1527(a), 416.927(a); SSR 96-2p. An ALJ may reject a "treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own creditability judgments, speculation, or lay opinion." Humpreys v. Barnhart, 127 F.App'x. 73, 75 (3d Cir. 2005). However, an ALJ may "afford a treating physician's opinion more or less weight depending upon the extent to which

10

supporting explanations are provided." Plummer, 186 F.3d at 429. Furthermore, "an ALJ may reject a physician's opinion on the basis of contradictory or inconsistent evidence." Zappala v. Barnhart, 192 Fed. Appx. 174, 176 (3d Cir. 2006) (citing Plummer, 186 F.3d at 429).

In the present matter, ALJ Arrastia did not give controlling weight to the opinions of Dr. Brigio because the opinions were not supported by the record, inconsistent with substantial evidence, and not based on a medical diagnosis (R. at 21.) Specifically, ALJ Arrastia rejected Dr. Brigio's statement that Garrison "can work less than two hours a day on two days a week due to his back pain and fatigue, chest pain, shortness of breath, retinopathy, and weakness/difficulty walking...because it was not supported by the records." (R. at 21). In addition, ALJ Arrastia did not accept Dr. Brigio's opinion that Garrison's chest pain "significantly limits him" because of the statement by Dr. Levi, Garrison's treating cardiologist, that Garrison "did not complain of chest pain or shortness of breath." (R. at 21.) Furthermore, ALJ Arrastia rejected Dr. Brigio's statement that Garrison has "anxiety, somatoform disorder, and depression because none of these conditions have been diagnosed or treated by a mental health care professional." (R. at 21.)

11

Because ALJ Arrastia did not base his decision regarding the weight of Dr. Brigio's opinion on the ALJ's own credibility judgment, speculation, or lay opinion, but rather on the basis of more credible evidence in the record, his decision is sound. ALJ Arrastia states that Dr. Brigio's opinion about Garrison's orthopedic limitations directly contradicts the statement of Dr. Levitsky, the treating orthopedist. (R. at 21). Dr. Levitsky was unable to diagnose such impairment and was unable to correlate Garrison's symptoms with any objective, medical findings. (R. at 208.)

Therefore, based upon ALJ Arrastia's reasoning as expressed in his opinion, ALJ Arrastia afforded proper weight to Dr. Brigio's statements and opinions. ALJ Arrastia's conclusions are grounded in the record and supported by substantial evidence.

B.   Credibility of Garrison & His Wife

Garrison argues that ALJ Arrastia erred in his determination of both Garrison's and his wife's credibility.

An ALJ must corroborate subjective complaints regarding a disability with objective medical evidence. 20 C.F.R. § 404.1529(a). However, an ALJ cannot disregard the opinions of treating and examining physicians in favor of the claimant's subjective claims. See Jones v. Sullivan, 954 F.2d 125, 129 (3d

12

Cir. 1991) (holding an unsupported diagnosis is not entitled to significant weight).

In this case, ALJ Arrastia compared Garrison and his wife's testimony that Garrison experiences constant chest pain, fatigue, shortness of breath, and he is "unable to do anything" with other evidence in the record.  (R. at 21.)  Specifically, ALJ Arrastia looked to the records of the treating cardiologist, which state that the Garrison had no complaints of chest pain or shortness of breath.  (R. at 21.)

ALJ Arrastia acted within his discretion when he determined that Garrison's and his wife's subjective testimony of Garrison's disability was inconsistent with other evidence in the record. See Woody v. Sec'y of Health and Human Servs., 859 F.2d 1156, 1159 (3d Cir. 1988) ("In demonstrating his disability, [a] claimant may not rely solely on his own stated symptoms, but must provide medical signs and findings, established, by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which...would lead to a conclusion that the individual is under a disability.").  Therefore, the Court finds

13

substantial evidence in the record to support ALJ Arrastia's decision.

### C. Back Impairment

Garrison claims that ALJ Arrastia failed to adequately review the evidence of record when he determined that Garrison "does not have a severe back medically determinable impairment because there is no objective medical evidence of such an impairment that would reasonably be expected to cause any significant functional limitations." (R. at 22.)

Garrison cites a progress note from Dr. Brigio that states that Garrison was suffering from back pain, neck pain, chest pain and headaches. (Pl.'s Br. at 19.) Although Garrison is correct that ALJ Arrastia did not follow the opinions of Dr. Brigio, Garrison fails to acknowledge the underlying reason for ALJ Arrastia's departure. As stated above, ALJ Arrastia gave little weight to the opinions of Dr. Brigio because the opinions were not supported by the record, inconsistent with substantial evidence, and not based on a medical diagnosis. (R. at 21.) ALJ Arrastia gave weight to the findings of Dr. Levitsky who was unable to diagnose a back impairment and was unable correlate Garrison's symptoms with any objective findings. (R. at 208.)

14

Given ALJ Arrastia's examination of all the medical opinions in the record, the Court finds that ALA Arrastia adequately evaluated all relevant medical evidence in rendering his decision.

D.  RFC Determination

RFC is defined in the Commissioner's regulations as the most an individual can still do after considering the physical and/or mental limitation affecting his ability to perform work-related tasks.  20 C.F.R. § 416.945.  In the present case, this Court must determine whether ALJ Arrastia's ruling on Garrison's RFC was supported by substantial evidence.

Garrison argues that ALJ Arrastia erred in his determination that Garrison retains the RFC to perform "sedentary work."  (R. at 23.)  Garrison specifically argues that ALJ Arrastia "not only failed to consider medical evidence...but failed to consider the side effects of the plaintiff's medications, the effects of fatigue on the plaintiff's ability to perform work related functions, and the potential effects of the plaintiff's internal defibrillator (ICD) on his ability to sustain work on a full time basis." (Pl.'s Br. at 21.)  Additionally, Garrison argues that ALJ Arrastia failed to utilize the testimony of a vocational expert in determining Garrison's RFC.

15

Although this Court must affirm an ALJ's RFC determination if it is supported by substantial evidence, "[e]vidence is not substantial if the Commissioner failed to consider all relevant evidence or failed to resolve conflicts created by counter-veiling evidence or overwhelmed by other evidence." Gifford v. Barnhart, 129 F. App'x. 704, 706 (3d Cir. 2005).  The ALJ must consider all of the evidence and provide his reasons for crediting certain portions of the record over others.  Oh v. Barnhart, 68 F. App'x. 370, 374 (3d Cir. 2003).

As previously discussed, ALJ Arrastia took into account all the evidence in the record, including the various treating physicians and Garrison's own testimony.  Specifically, ALJ Arrastia took note of the issues brought about by Garrison's ICD when he rejected the November 2003 RFC assessment stating that Garrison was capable of performing medium work.  ALJ Arrastia rejected this recommendation because of the complications caused by Garrison's ICD but still found that Garrison could perform sedentary work.  (R. at 22.)  ALJ Arrastia adequately resolved the conflict posed by Dr. Brigio's Medical Source Statement by deciding to afford it little weight because it was inconsistent with the findings of other treating physicians and was not supported by clinical notes or by substantial evidence in the

16

record.  Moreover, because ALJ Arrastia found that Garrison's testimony lacked credibility, his complaints of subjective symptoms did not suffice to further limit his RFC.  Thus, there is no credible evidence indicating that Garrison's conditions limit his RFC such that he cannot perform sedentary work.  Furthermore, because vocational expert testimony is not required where there are no non-exertional impairments, ALJ Arrista decision to not utilize the testimony of a vocational expert was within the ALJ's discretion.  See <u>Sykes v. Apfel</u>, 228 F.3d 259, 273 (3d Cir. 2000).

    E.    <u>Consideration of New Evidence</u>

Garrison puts forth new evidence that is not part of the record of the previous proceeding.  Garrison offers a letter from Dr. Levi, dated May 15, 2006, which states that while Garrison did not complain of chest pains in 2004, he has complained of chest pains the majority of the time since then.  (Pl.'s Br. Ex. A.)  Dr. Levi's letter goes on to state that "[i]t is within the realm of possibility that he did not have chest pain during those episodes but has chest pain at other times."  (Pl.'s Br. Ex. A.)

In order for a case to be remanded to the Commissioner for consideration of new evidence, the new evidence must be material and there must be good cause shown for the failure to incorporate

17

the new evidence into the record of the prior proceedings. Jones, 954 F.2d at 128; see also Szubak v. Sec'y of Health and Human Svcs., 745 F.2d 821,834 (3d Cir. 1984) (holding that a claimant that was not represented by counsel during an ALJ hearing has good cause the entering new evidence once the claimant obtained counsel). To meet the materiality standard, the new evidence must present a reasonable possibility that it would have changed the outcome of the Commissioner's decision. Id. at 833 (citing Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981)). Additionally, the new evidence must concern the period for which benefits were denied and not relate to a later-acquired disability or a deterioration of a condition previously found to be non-disabling. Szubak, 745 F.2d at 833.

In the instant case, Garrison's new evidence is not material and he has not shown good cause for not entering the evidence in the prior proceeding. The letter from Dr. Levi only states that "[i]t is within the realm of possibility that he did not have chest pain during those episodes but has chest pain at other times." This assertion from Dr. Levi does not present a reasonable possibility that that ALJ Arrastia's decision would have been different. Dr. Levi's letter does not present a medical diagnosis but rather postulates that Garrison may or may

not have experienced chest pains during 2004.  Furthermore, Garrison has not shown good cause why this letter could not have been presented during ALJ Arrastia's hearing of the case.  Garrison argues that Dr. Levi's letter was procured specifically to rebut ALJ Arrastia's findings and, therefore, it was not possible to produce the letter during the proceeding.  This argument is meritless.  If ALJ Arrastia needed such evidence in formulating his decision, it should have been entered into the record of the prior proceeding.

### IV.  Conclusion

Based on the foregoing reasoning, this Court will affirm ALJ Arrastia's decision.  The accompanying Order shall issue today.


Dated: July 16, 2007            s/ Robert B. Kugler
                                ROBERT B. KUGLER
                                United States District Judge